■ In the Matter of ANDREW J. SPANO, as County Executive of the County of Westchester, et al., Respondents-Appellants, v ANTONIA C. NOVELLO, as Commissioner of Health, et al., Appellants-Respondents. [788 NYS2d 205]—

Mugglin, J. Cross appeals from a judgment of the Supreme

Court (Connor, J.), entered November 10, 2003 in Albany County, which, inter alia, granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Department of Health requiring petitioners to pay $7.3 million in Medicaid reimbursement.

The Department of Health and Human Services (hereinafter HHS) conducted audits for the years 1984 through 1991 for reimbursement claims submitted by New York for inpatient hospital services provided at two hospitals located in Westchester County—St. Vincent's Hospital and Medical Center and New York Hospital, Westchester Division. The audits concluded that New York was not entitled to federal financial participation for services provided at these two hospitals since each was certified as an institution for mental disease within the meaning of the federal Medicaid act, which disallows payment for services provided to individuals between the ages of 21 and 64 who reside in or are treated at an institution for mental disease. HHS sought reimbursement of approximately $37 million. Respondent State of New York and its Department of Social Services (hereinafter DSS) appealed the determination, but both the HHS Departmental Appeals Board and the US District Court for the Southern District of New York affirmed. The parties reached a settlement in 1998 which reduced the net disallowance to approximately $32 million.

Thereafter, the State Department of Health (hereinafter DOH) sought to recoup from petitioners approximately $7.3 million of the disallowance from the County of Westchester. As a result, petitioners commenced this CPLR article 78 proceeding seeking, among other things, a declaration that the DOH determination was arbitrary and capricious. Shortly after the institution of the proceeding, petitioners moved to join the two hospitals (hereinafter the providers) as necessary parties to the proceeding and, thereafter, to convert the proceeding into an action seeking declaratory, injunctive and monetary relief. In November 2003, Supreme Court granted petitioners' application, holding that the DOH determination was arbitrary and capricious and lacked a rational basis. Respondents appeal. Petitioners cross appeal from the judgment, in the event we reverse, to the extent that Supreme Court failed to address petitioners' motion to join necessary parties and to convert the proceeding to an action.

We reverse. As a general proposition, the cost of medical services to indigent persons is borne equally between the State and a county after deduction of any available federal funding (see Social Services Law § 368-a [1] [d]). One narrow exception to

this general rule is found in Social Services Law § 368-a (1) (h), commonly referred to as the Takeover Statute. This section, enacted in response to the potential for dramatically increased medical assistance costs to be borne by the counties after the State deinstitutionalized care for the mentally ill (*see Matter of Krauskopf v Perales*, 139 AD2d 147, 149 [1988], *affd* 74 NY2d 730 [1989]), provides that the State must pay 100% of the cost for a class of mentally disabled persons determined by the Commissioner of Social Services to be such. To qualify, the patient must (1) have received inpatient psychiatric services, (2) be listed on the Office of Mental Health master list as a person discharged from an Office of Mental Health psychiatric center between April 1, 1971 and December 31, 1992, and (3) have had 90 or more days of service prior to discharge. Notably, DOH reduced its demand by approximately $400,000 because of the applicability of this statute, but still seek approximately $6.9 million from the County of Westchester. Hence, Supreme Court incorrectly found that the Takeover Statute requires the State to pay 100% of the amount expended.

Petitioners' reliance on Social Services Law §§ 365 and 368-a (1) (b) is also misplaced. Social Services Law § 365 (2) (a) and (b) provide, respectively, that the State shall pay 100% of the cost for treatment of eligible individuals that are 65 years of age or older or that are under 21 year of age who are patients at "state hospitals for the mentally disabled." This section has no applicability here as the patients are all between the ages of 21 and 64 and neither provider is a state hospital for the mentally disabled (*see* Mental Hygiene Law § 7.17 [b]). Likewise, Social Services Law § 368-a (1) (b), in relevant part, provides that the State shall pay "the full amount expended on behalf of the department for medical assistance furnished under this title to eligible patients in state institutions for the mentally disabled." Again, neither provider is such an institution.

Next, we disagree with Supreme Court's conclusion that because the State knew or should have known that the certification of the providers as psychiatric hospitals would disqualify them from federal Medicaid program reimbursement, the State was at fault for the disallowances and cannot claim reimbursement from the County of Westchester. First, the pertinent regulation clearly anticipates adjustments to be made in the event of federal disallowances (*see* 18 NYCRR 601.4 [f]). Next, nothing in the regulations or the Social Services Law conditions the State's ability to allocate medical assistance funds or recoup federal disallowances based upon fault. Moreover, as Medicaid reimbursement results from a combination of federal, state and

local funds, even if these institutions were not eligible to receive federal funds, they were eligible for and did receive state funds.

We further disagree with Supreme Court that DOH failed to provide sufficient documentation to support its claim for recoupment. The documentation includes (1) a letter explaining that the State paid half of the federal disallowance and how it allocated the other half to the counties in direct proportion to the amount each county had originally been paid as its federal share, (2) a report summarizing the payments at issue by facility and county of responsibility, and (3) an affidavit from respondent Director of Medicaid Financial Management and additional reports which illustrate the allocation of the disallowances as between the several counties. While admittedly complex, the claim was adequately particularized.

As to the balance of the issues, we find that Supreme Court should have dismissed the proceeding as to respondent Comptroller and respondent Commissioner of Mental Health as they are not necessary parties. The Comptroller is only the manager of the escrow fund relating to Medicaid and the Commissioner of Mental Health has no role beyond certifying hospitals. As such, neither would be inequitably affected by any judgment herein and complete relief can be accorded to the other parties in their absence (*see* CPLR 1001 [a]).

We find no merit in petitioners' claim that the U.S. District Court decision is res judicata as it found that the costs at issue could not be characterized as Medicaid costs. Res judicata applies only to previous litigation between the same parties or others in privity (*see McDonald v Lengel*, 2 AD3d 1182, 1183 [2003]). Petitioners were neither parties to the federal litigation nor in privity with any party.

Lastly, we reject petitioners' request that this proceeding be converted into an action for declaratory, injunctive and monetary relief and to join the two providers as parties. In our view, the State is clearly entitled to recover the amount of the claim from the County of Westchester, so there is no basis for declaratory, injunctive or monetary relief. Moreover, there is no basis for the County to seek money damages from the providers. The services they provided were covered under state law and, thus, the payments to the providers were not overpayments and were properly billed to the Medicaid program. The federal disallowance simply increased the amount that the State and County must pay for these services, furnishing no basis upon which the County can predicate a claim against the two providers.

Crew III, J.P., Rose and Lahtinen, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and petition dismissed. [*See* 2 Misc 3d 864.]